Solomon WOODSON, Plaintiff,

v.

Anthony J. CELEBREZZE, Secretary of Health, Education, and Welfare, Defendant.

Civ. A. No. 726.

United States District Court
S. D. West Virginia,
at Bluefield.

May 9, 1963.

J. N. Harman, III, Welch, W. Va., for plaintiff.

Harry G. Camper, Jr., U. S. Atty., Charleston, W. Va., for defendant.

HARRY E. WATKINS, District Judge.

Plaintiff seeks judicial review of the final decision of the Secretary of Health, Education, and Welfare that he was not entitled to a period of disability or to disability insurance benefits under sections 223 and 216(i) of the Social Security Act, as amended. For the reasons hereinafter stated, it is now found that the Secretary's decision is supported by substantial evidence and that defendant's motion for summary judgment should be granted.

On October 4, 1960, plaintiff filed an application for disability insurance benefits and to establish a period of disability, alleging that he became disabled in June, 1956, because of silicosis, arthritis, and a blood clot in his right leg. This application was denied by the Bureau of Old-Age and Survivors Insurance both initially and upon reconsideration. On July 18, 1962, a hearing examiner found that plaintiff did not meet the test of disability under the Act and was not entitled to the benefits sought. This decision became the final decision of the Secretary when the Appeals Council denied plaintiff's request for review on October 25, 1962.

In order to meet the statutory definition of disability, plaintiff had to establish that he had been continuously precluded from engaging in any substantial gainful activity by a disabling impairment or impairments which began no later than December 31, 1960, the last date that he met the special earnings requirements.

Plaintiff's correct date of birth, as determined by the Department of Health, Education, and Welfare, is January 11, 1915. At the hearing plaintiff testified that he had a third grade education which he obtained in Alabama, the place of his birth. He worked on a farm in Alabama until he was about twenty-one years old. Then in 1936 he came to West Virginia and worked in the coal mines. This he continued to do until 1956. He had

loaded coal, worked as a brakeman on an underground railroad system, and has also worked on a supply crew loading timber and other mine supplies.

Plaintiff testified that in 1954 he caught his right leg or foot in a mine railroad switch. This accident twisted some veins or muscles in his leg. He did not break any bones and was told that he could return to work. Shortly thereafter plaintiff was laid off. He was recalled to the mines in 1955 but his right leg began to swell and cause him pain. In the summer of 1956 he was hospitalized for this condition. He asserts that he has been unable to work since that time. He stated that his condition has deteriorated steadily. He further asserts that his chest hurts him almost constantly. He also complains of being very nervous and often wakes up at night with "shaking" spells. Plaintiff's wife testified, among other things, that plaintiff has periodic swelling in his lower abdomen. She also said that it was necessary for her to be with him most of the time because of his "spells." Plaintiff's medication consists mainly of aspirin and Pepto Bismol.

Plaintiff further testified that he does virtually nothing around the house. He does not own or operate an automobile and does not work in the small garden. He complains of a very poor appetite, but does not believe that he has lost any appreciable weight. His wife is of the opinion that he is slightly more than his normal weight of 155 pounds because of the swelling in his leg and abdomen.

A statement from the Welch Memorial Hospital, dated June 2, 1958, is to the effect that plaintiff's chest was X-rayed in 1955. That X-ray revealed silicosis. No clinical data was presented to support this statement.

Dr. Arthur A. Carr examined plaintiff for the West Virginia Department of Public Assistance and reported on June 17, 1958, that plaintiff had been awarded a claim for first stage silicosis in 1957. Plaintiff had a normal appearance, regular and full pulse, and a normal heart

size with normal sounds. He had no arteriosclerosis, and the condition of the palpable arteries was described as normal. Dr. Carr further reported the presence of an old, inactive thrombosis in the right lower leg. Plaintiff's respiratory system was described as having "roughened breath sounds." He also had a "Low I. Q." Dr. Carr's diagnosis was (1) first stage silicosis, (2) old "thrombophletis" in the right leg, and (3) mild disturbance in the circulation of both legs. Plaintiff's prognosis was good unless chest X-rays showed additional pathology. No restrictions on plaintiff's activities were noted. Dr. Carr observed that plaintiff could perform "any" full time or part time work. His final remark was "OK for work unless additional chest pathology shows up."

Dr. Perry Futterman reported on July 9, 1958, that plaintiff had moderate pulmonary emphysema, pulmonary fibrosis, malnutrition, and possible duodenal ulcer, active, simple. In discussing emphysema, Dr. Futterman said that there were no signs of that condition except the absence of normal thoracic cardiac percussion dullness. Plaintiff was given some medicine for his alleged breathing difficulty. Plaintiff said that this medicine was of considerable help to him.

Dr. G. E. Irvin reported on October 27, 1958, that plaintiff was noted to have pneumoconiosis, asthma, and an anxiety state. He was advised to wear an Ace bandage for the swelling in his leg and to return if his chest symptoms became aggravated. Dr. Irvin also stated that examination revealed expiratory rhonchi, a normal heart, and some "slight" enlargement of the right leg secondary to phlebitis. He found nothing abnormal about plaintiff's abdomen.

Dr. Irvin further reported on August 11, 1959, that plaintiff suffered from chronic bronchial asthma and an anxiety state. He was given bronchodilator drugs, Aerosol therapy, vitamins, and tranquilizers. He was advised to receive other drugs through the United Mine

Workers. No opinion was expressed as to plaintiff's ability to perform work.

In a report dated December 5, 1960, Dr. Alphonso Morales diagnosed plaintiff's condition as asthmatic bronchitis, anxiety state, and residuals of an old thrombophlebitis of the right leg with mild swelling. These conditions were described as "static." "Exertion, ambulation" were the restrictions on plaintiff's activity.

Dr. George L. Fischer reported on March 10, 1961, after making a thorough physical examination, pulmonary functions studies, X-ray of the chest, and other clinical tests, that plaintiff in his opinion:

> " * * * has coal miners pneumoconiosis with perhaps some associated asthmatic bronchitis. There is no clinical evidence of heart disease. He has residuals of thrombophlebitis in the right leg. There is evidence of mild rheumatoid arthritis in the right hand and there is partial amputation of the ' left index finger. There appears to be a severe associated chronic anxiety state."

On March 21, 1961, Dr. David M. Wayne, director of the Bluefield Mental Health Center, reported that plaintiff's emotional symptoms were minimal and not disabling. In his report he stated that:

> "His memory is good for remote and recent events, he is oriented in all major spheres, his affect is appropriate, his intelligence is intact and his judgment is questionable. He has no insight. Major psychotic signs are not observed or elicited. He is felt to be functioning at a borderline level of intelligence. He has a fourth grade education.

> "DIAGNOSTIC IMPRESSION: Anxiety reaction, mild.

> "RECOMMENDATIONS: None. This man is not disabled from a psychiatric standpoint."

The latest medical report of record is a further one from Dr. Irvin, dated September 16, 1961. In this report Dr. Irvin stated that plaintiff's diagnosis was a "low grade" asthmatic bronchitis, old varices with thrombophlebitis, generalized fibrositis, and chronic anxiety state. A physical examination revealed little except for scattered sibilant and sonorous rales throughout both lung fields. He had "fairly good" chest expansion. His heart was normal and his blood pressure was 140/82. Dr. Irvin found no abnormality in plaintiff's abdomen. He noted that minimal rheumatoid changes in the right hand and a brawny edema in the right leg, secondary to old phlebitis.

On the basis of the evidence discussed above and all other evidence of record, both objective and subjective, it is clear that there is substantial evidence to support the decision of the Secretary that plaintiff did not meet the test of disability under the Act and that he was not entitled to the benefits sought.

The medical evidence is clear that plaintiff suffered a leg injury in 1954 and that apparently as a result thereof, he suffered thrombophlebitis in his right leg. There is no evidence that this condition is deteriorating although there is some swelling. There is almost no medical evidence concerning an arthritic condition. What evidence there is as to that condition makes it apparent that plaintiff's arthritis is only minimal. His chest condition has been described, among other things, as first stage silicosis and asthmatic bronchitis. Dr. Irvin in the latest medical report described plaintiff's asthmatic bronchitis as "low grade." His heart and blood pressure are normal. The medical evidence as to the extent of plaintiff's anxiety reaction or state is that such is not disabling and is termed "mild."

Since there is substantial evidence to support the Secretary's decision that plaintiff is not disabled within the meaning of the Act and is not entitled to the benefits sought, defendant's motion for summary judgment is granted.